**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**ANDRE CRAWFORD**                                              **PETITIONER**

**VS.**                  **CASE NO. 5:08CV00108 JLH/HDY**

**LARRY NORRIS, Director of the
Arkansas Department of Correction**              **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.      Why the record made before the Magistrate Judge is inadequate.

    2.      Why the evidence proffered at the hearing before the District

>   Judge (if such a hearing is granted) was not offered at the
>   hearing before the Magistrate Judge.
>
> 3.  The detail of any testimony desired to be introduced at the
>     hearing before the District Judge in the form of an offer of
>     proof, and a copy, or the original, of any documentary or
>     other non-testimonial evidence desired to be introduced at
>     the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A149
>   Little Rock, AR 72201-3325

## DISPOSITION

Now before the Court is the application for writ of habeas corpus pursuant to 28 U.S.C. §2254 of Andre Crawford, an inmate in the custody of the Arkansas Department of Correction (ADC). In December of 2003, Mr. Crawford was convicted following a jury trial in Phillips County Circuit Court of simultaneous possession of drugs and firearms, possession of a controlled substance with intent to deliver, and possession of a firearm by a felon. He was sentenced to an aggregate sentence of 480 months. A direct appeal to the Arkansas Court of Appeals was unsuccessful. The appellate opinion was delivered on September 28, 2005. A motion for rehearing was denied on November 2, 2005. On October 12, 2007, Mr. Crawford filed a petition for error coram nobis with the Arkansas Supreme Court. This request was denied on November 29, 2007. In addition, the petitioner sought habeas corpus relief in state court, filing a petition with the Jefferson County

Circuit Court on April 25, 2007. This request was denied on May 29, 2007. In the current petition for federal habeas corpus relief, Mr. Crawford urges that he was convicted on facts not determined by a jury, rendering his conviction unconstitutional. Further, Mr. Crawford argues that this claim is based on a new rule of Constitutional law, retroactively applying to his case.

Respondent contends that the statute of limitations bars consideration of this petition. Section 101 of 28 U.S.C. 2244 (as amended) imposes a one year period of limitation on petitions for writ of habeas corpus:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Respondent contends that Mr. Crawford's conviction became final on January 31, 2006, one year and ninety days after the Arkansas Supreme Court denied his petition for rehearing. As a result, the respondent urges that the petitioner should have filed his petition for habeas corpus relief on or before January 31, 2007. The respondent argues that the petitioner's failure to act is fatal to this

action.

By previous Order, the petitioner was notified of his opportunity to further address[1] the statute of limitations and its applicability in this case. The Court has not received an additional pleading on this subject.

We first consider whether the petition is barred as untimely. The respondent calculates that the petitioner should have filed his petition on or before January 31, 2007, in order to comply with the limitation period. While we find no fault with this calculation, it is appropriate to toll the limitation period under some circumstances. In this instance, it appears that the petitioner is arguing that the limitation period should be tolled because he did not discover the jury tampering issue until after he had pursued his remedies (Rule 37, Petition to Reinvest Jurisdiction in Circuit Court or, in the alternative, to Consider Petition for Writ of Error Coram Nobis and Writ of Audita Querela) in state court. In *Calderon v. United States District Court for Central District of California*, 112 F.3d 386 (9th Cir. 1997), the Ninth Circuit Court of Appeals held that the limitation period may be equitably tolled if "extraordinary circumstances" beyond a prisoner's control render it impossible for him to file a timely petition. *Id.* at 391. The question, then, is whether the failure to discover the jury tampering issue was beyond Mr. Crawford's control. The petitioner does not provide facts on how the jury tampering issue came to his attention. The evidence the petitioner cites for jury tampering is two affidavits from the jury foreperson. These affidavits, attached to the petition, are dated February 5, 2007, and April 2, 2007, respectively. In the absence of more information, it is hard to determine if Mr. Crawford could have been more diligent and discovered this ground for relief in time to submit it to the state courts. Mr. Crawford bears the responsibility of showing that

---

[1]In his petition, Mr. Crawford addresses the issue of the limitation period.

circumstances beyond his control kept him from filing a timely petition. He has not done so, and we recommend that the petition be dismissed as untimely.

If we were to presume, out of an abundance of caution, that the petitioner established facts to equitably toll the limitations period, then an examination of the petitioner's claims would be in order. We will indulge this presumption and consider the two claims advanced by Mr. Crawford.

The initial claim is that he was convicted on facts not determined by a jury, rendering his conviction unconstitutional. In his Memorandum in Support of Petition for Relief under 28 U.S.C. § 2254, Mr. Crawford outlines his first claim:

> . . . he was punished based upon facts that were not admitted or proved to a jury beyond a reasonable doubt, and even facts that were not even charged in the indictment.
>   These allegations were that Mr. Crawford had been identified by witnesses as the one who fired shots in a drive-by shooting, during which a man was injured, on the evening before the drugs and firearms were found in his house. The trial court denied Crawford's *motion in limine* and allowed the police officer to testify that Mr. Crawford had been identified as the shooter in the drive-by shooting. The jury was tainted because a juror has stated in a notarized affidavit that she found Mr. Crawford guilty to advance her career to be employed by the trial judge. Mr. Crawford was charged with these crimes, no jury was asked to determine these facts, and no jury determined these facts beyond a reasonable doubt because his sentence was unconstitutional.

Docket entry no. 2, page 11.

On direct appeal, the Arkansas Court of Appeals summarized the evidence adduced at the trial. This narrative indicates that a jury convicted Mr. Crawford and that the appellate court addressed the issues now raised by Mr. Crawford, with the exception of the issue of the alleged tainted jury:

> Crawford was charged with crimes filed under two separate criminal informations. One information concerned a drive-by shooting incident and the other information concerned the possession of an illegal substance and firearms. The State elected to

5

try the possession case first, and Crawford's attorney moved for a continuance because he stated that he was misled by the prosecutor about which case would be heard first so he was not prepared to try the possession case. The trial court denied Crawford's motion for continuance.

The testimony revealed that on July 9, 2002, at approximately 12:35 a.m., police officers of the West Helena Police Department were called to investigate the shooting of Robert Woods. Woods had been shot in the stomach by a person in a moving car. Woods told police officers that Crawford was the person who shot him. Woods later picked Crawford out of a lineup as the person who shot him. Jason Braggs and Marcus Davis witnessed the shooting and identified the shooter to the police as Crawford. The police recovered four .45 caliber shell casings at the scene. A search warrant was obtained and executed at Crawford's residence the next morning on July 10, 2002. The police found a .270 rifle in Crawford's bedroom closet; a loaded .45 caliber pistol under a couch cushion in the living room; and seven ounces of marijuana, individually packaged in thirteen bags, each of which weighed approximately one-half ounce, hidden under the springs of the couch.

At his trial for possession of a controlled substance and firearms, Crawford moved to exclude testimony from police officers concerning the fact that Crawford had been identified by witnesses as the one who fired shots in a drive-by shooting, during which a man was injured, on the evening before the drugs and firearms were found in his house. The trial court denied Crawford's motion *in limine* and allowed the police officers to testify that Crawford had been identified as the shooter in the drive-by shooting.

The State called three police officers who each testified that witnesses Robert Woods, Marcus Davis, and Jason Braggs had identified Crawford as the shooter shortly after the incident. Each police officer also testified to the details of the shooting. Robert Woods, the victim of the drive-by shooting, testified at trial that he was not sure that it was Crawford who shot him, contradicting his earlier statements to police. A firearm and tool marks examiner testified for the State that the bullets found at the drive-by shooting scene were fired from the pistol found at Crawford's house. During its case-in-chief, the State introduced the affidavit for the search warrant for Crawford's home into evidence. Crawford objected to the admission of the affidavit, but the trial court admitted it into evidence over Crawford's objection.

Maxie Holliman, Crawford's cousin, testified for the defense that, on the night of the drive-by shooting, she saw Crawford in England, Arkansas, around midnight as he was leaving her mother's house. Chaffa Key, also Crawford's cousin and another defense witness, testified that she saw Crawford in England, Arkansas, at approximately midnight. Crawford's mother testified that he had been in England, Arkansas, on July 8, and that she had seen Crawford give his house keys to a friend

> named Calhoune on July 1, 2002. Marcus Davis, a witness to the drive-by shooting, testified for the defense that he could not say with certainty that it was Crawford who was the shooter even though he had previously signed a statement for the police in which he identified Crawford as the shooter. Jason Braggs, another eyewitness to the drive-by shooting, also testified that he could not identify the shooter even though he had previously signed a statement naming Crawford as the shooter. Kevin Bryant testified that someone named Calhoune was the shooter in the drive-by and that he was in the car with Calhoune when Calhoune shot at Marcus Davis. Bryant also testified that, from a distance, he saw Calhoune take a big garbage bag and a rifle into Crawford's house on the night of the drive-by shooting.
>
> Crawford took the stand in his own defense. He testified that he arrived in West Helena, Arkansas, from England around 12:40 or 12:50 a.m. on July 10. He denied being the shooter in the drive-by shooting, and he denied any knowledge of the marijuana and firearms found in his house.
>
> The jury found Crawford guilty of simultaneous possession of firearms and drugs, possession of a controlled substance (marijuana) with intent to deliver, and possession of firearms by certain persons. . .
>
> The evidence is sufficient to show that, at the very least, Crawford constructively possessed the marijuana and firearms. Crawford admitted that he was a convicted felon, and he possessed seven ounces of marijuana . . . The evidence is clearly sufficient enough to convict Crawford of being a felon in possession of a firearm and possession of a controlled substance (marijuana) with intent to deliver.
>
> To be convicted of the simultaneous possession of drugs and firearms, the evidence must show that the defendant possessed a firearm and that a connection existed between the firearm and the controlled substance. [citation omitted] The pistol and the marijuana were located within mere feet of each other, both concealed below the cushions of the same couch. The gun was loaded and the marijuana was packaged for individual sale. Thus, viewing the evidence in the light most favorable to the State and considering only the evidence that supports the verdict, substantial evidence supports Crawford's convictions.

Exhibit B, pages 1-4, docket entry no. 8.

The Arkansas Court of Appeals also considered the argument that the trial court erred in allowing the police officers to testify that Crawford was identified as the shooter in the drive-by shooting the night before Crawford's home was searched. The appellate court found no error by the

trial court, because "the fact that Crawford was identified as having a gun the night before two guns were found in his home provides independent relevance as to the facts that Crawford possessed a gun, that the gun belonged to Crawford rather than someone else in the home, and that Crawford had a motive for hiding the gun in his home." Exhibit B, page 6, docket entry no. 8.

Based upon the description provided by the Arkansas Court of Appeals, the petitioner's argument that he was convicted based upon facts that were not admitted or proved to a jury is without merit. Mr. Crawford fails to establish any constitutional defect regarding the evidence supporting his convictions. As previously mentioned, the state courts did not address the issue of the affidavits of the juror, as these affidavits were apparently not available until some time after the direct appeal. We will address the impact of the affidavits of Deborah Galloway, one of the jurors in the case.

The February 5, 2007, affidavit of Ms. Galloway indicates that she had some "reservations about Mr. Crawford's guilt" during the trial. She also states that she met with the judge during the "procedures" and "had tea and conversation." According to the affidavit, the trial judge asked if Ms. Galloway would "be interested in working on his staff should he decide to advance his political career." Ms. Galloway states that later that day the judge informed the jury that they would not go home until a verdict was reached. Although she indicates she had doubts about the evidence, she "finally said okay ten years was enough because I figured if I went with the majority the judge would know that I would be a loyal member of his staff and I could be trusted." Her affidavit concludes with an apology to Mr. Crawford and his family for "not standing up for him, knowing he was innocent." See attachment to the petition, docket entry no. 1.

The April 2, 2007, affidavit of Ms. Galloway indicates that she later concluded that the

evidence of the prosecutor "has not added up." She states that she visited the judge in chambers "on a few occasions and the conversations were not relevant to Mr. Crawford's case." She concludes, "In closing, I would just say looking back, and with the evidence presented and the drama that presented not only in the court room but, also the deliberation room, it is my opinion respectfully, that there should have not been a 'Guilty Verdict Rendered." See attachment to the Petition, docket entry no. 2.

Although the petitioner characterizes the issue as "jury tampering," the plain language of the affidavits does not fit this description. The assertions of Ms. Galloway are not that a juror provided extraneous information during deliberations. *See United States v. Swinton*, 75 F.3d 374 (8th Cir. 1996) (juror stated during deliberations that the defendant had a prior conviction, which was a fact not produced at trial). Nor does she assert that the trial judge improperly commented about the case, although her claim that the judge conversed with her on other issues is unusual. Rather, her allegations are essentially that she had misgivings about the evidence and the decision she made. "After a jury has given its verdict, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late." *United States v. Schroeder*, 433 F.2d 846, 851 (8th Cir.1970). The affidavits submitted by Ms. Galloway do not establish a constitutional defect in the proceedings, and we find no merit to the first claim advanced by Mr. Crawford.

His second claim is that his sentence was based upon facts not determined by a jury, and that this claim is based upon a new rule of constitutional law made retroactively applicable by the United States Supreme Court. Mr. Crawford cites *United States v. Booker*, 125 S.Ct. 738 (2005), to support his claim. Despite Crawford's suggestions that *Booker* is applicable by analogy to other cases,

*Booker* simply does not apply in this instance. The essence of *Booker* is that the federal sentencing guidelines are subject to jury trial requirements of the Sixth Amendment. Here, Mr. Crawford was tried and sentenced by a jury, and he makes no showing that his Sixth Amendment rights were infringed by the manner in which he was tried and sentenced. There is no merit to this claim.

Although it is difficult to discern, it may be that the petitioner is arguing the following: that the trial court erroneously allowed in the evidence of the drive-by shooting, and this error deprived him of due process in that the jury was allowed to convict and sentence him based upon the drive-by shooting rather than based upon only the crimes for which he was charged. Construing the claim in such a manner, we look beyond the issue of whether the trial judge and state appellate court accurately applied the state procedural rules. We are guided by the Eighth Circuit Court of Appeals case of *Harris v. Bowersox*, 184 F.3d 744 (8th Cir. 1999):

> Harris argues that he was deprived of due process of law when the trial court allowed the prosecutor to comment upon and elicit testimony regarding certain uncharged bad acts. The district court concluded that Harris failed to show how any alleged error fatally infected the trial or undermined notions of fundamental fairness. We agree with the district court.
>
> "Because questions concerning the admission of evidence are matters of State law, our review of such questions in a habeas corpus proceeding is limited to determining whether the defendant's constitutional rights have been violated." *Rainer v. Department of Corrections,* 914 F.2d 1067, 1072 (8th Cir.1990), *cert. denied,* 498 U.S. 1099, 111 S.Ct. 993, 112 L.Ed.2d 1077 (1991). *See also Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir.1996), *cert. denied,* 520 U.S. 1171, 117 S.Ct. 1439, 137 L.Ed.2d 545 (1997). Further, there is no due process violation simply because a trial court admits evidence of a defendant's uncharged bad acts. *McDaniel v. Lockhart,* 961 F.2d 1358, 1360 (8th Cir.1992). A habeas petitioner
>
>> must show more than error requiring reversal on direct appeal to obtain relief. He must show that the alleged error rendered the entire trial fundamentally unfair-that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety, the verdict probably would have been different.

> *Carter v. Armontrout,* 929 F.2d 1294, 1296 (8th Cir.1991) (internal quotations omitted). *See also Mercer v. Armontrout,* 844 F.2d 582, 587 (8th Cir.) (noting that habeas relief is available only if the alleged error "fatally infected the trial" and deprived the petitioner of "the fundamental fairness which is the essence of due process") (internal quotations omitted), *cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988). In making our fundamental fairness determination, we "review the totality of the facts in the case and the fairness of the whole trial." *McDaniel,* 961 F.2d at 1360.

*Harris v. Bowersox,* 184 F.3d at 752.

In this instance, we have carefully reviewed the trial transcript and considered whether the evidence that Crawford was involved in a drive-by shooting fatally infected his trial on the other charges: simultaneous possession of drugs and firearms, possession of a controlled substance with intent to deliver, and possession of a firearm by a felon. The transcript reflects strenuous efforts by Crawford's trial attorney to limit the damage of the drive-by shooting testimony. The evidence, however, of the three possession charges was ample. Given the strength of the evidence on the possession charges, we find the evidence regarding the drive-by shooting did not impact the verdicts rendered against Mr. Crawford. It follows that the trial was not constitutionally deficient.

In summary, we find that the petition should be dismissed as untimely, as the petitioner fails to affirmatively show that the limitation period should have been tolled. Even assuming the limitation period was tolled, we find no merit in the grounds advanced by Mr. Crawford. As a result, we recommend the petition for writ of habeas corpus be dismissed, and the relief requested be denied.

IT IS SO ORDERED this   2   day of October, 2008.

_____
UNITED STATES MAGISTRATE JUDGE